UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**John R. Kelly,**

            **Plaintiff,**

      v.              5:02-CV-0641

**Sergeant JOHN BURNS, in his individual capacity;**
**Officer PAUL HANLEY, in his individual capacity;**
**Officer STEVE ABBOT, in his individual capacity;**
**Officer DANIEL BABBAGE, in his individual capacity;**
**Officer SEAN GOODEVE, in his individual capacity;**
**Officer ALP LLUKACI, in his individual capacity;**
**Officer SHAWN PRUE, in his individual capacity;**
**Sergeant JOHN SAVAGE, in his individual capacity;**
**Officer JOHN ESTABROOK, in his individual capacity;**
**Officer PAUL HUNTER, in his individual capacity,**

            **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

John R. Kelly
Plaintiff, *pro se*

TERRI BRIGHT, ESQ.
Corporation Counsel
Mary Anne Doherty, Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202
Attorney for Defendants

**Hon. Norman A. Mordue, D.J.:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

  In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants wrongfully arrested him and used excessive force in effectuating his arrest and interrogating him.

Defendants move for summary judgment dismissing the amended complaint. Plaintiff opposes defendants' summary judgment motion and cross-moves for summary judgment in his favor.[1] For the reasons set forth below, the Court grants so much of defendants' motion for summary judgment as seeks dismissal of plaintiff's Eighth Amendment claims.  In all other respects, the Court denies the summary judgment motion. The Court denies the cross-motion in its entirety.

## AMENDED COMPLAINT

In his amended complaint, plaintiff makes the following allegations.  On May 1, 2001, he was proceeding south on Interstate 81 in his van, when he observed a police car behind him with emergency lights flashing. He pulled over, put the vehicle in park, and turned off the engine. Three officers, with weapons drawn, ran towards the van.  They told him to place both of his hands on the steering wheel.  He complied immediately.  Officers Babbage and Hanley grabbed his hands and tried to pull plaintiff out of the vehicle through the driver's side window while other officers entered the van through the passenger side door and punched plaintiff repeatedly in the face and head.  Babbage and Hanley then pulled plaintiff through the window, dropped him "hard" on the concrete and handcuffed him behind his back.  Then, using his nightstick, Babbage struck plaintiff on the legs and head, knocking him unconscious.  The amended complaint states that defendants Sergeant Savage and Officers Babbage, Hanley, Hunter, Prue, Goodeve, Llukaci and Estabrook were involved in this incident.

Officers at the scene revived plaintiff, carried him to a police car, threw him in, and drove him to the police station. During the drive, he complained to the officer who was driving that the

---

[1] Attached to plaintiff's Notice of Cross Motion for summary judgment is a declaration by plaintiff filed July 16, 2004.  Plaintiff refers to the declaration both as support for his motion for summary judgment and as opposition to defendants' motion for summary judgment.  To avoid confusion the Court will refer to it simply as plaintiff's "July 16, 2004 declaration."

back of his head "hurt real bad."

After arriving at the police station, plaintiff was interviewed by Hunter and Hanley in Cell No. 1. Hunter became angry with plaintiff for not answering questions about drugs and "setting up drug dealers." At Hunter's suggestion, Hanley left the cell, after which Hunter used racial epithets, told plaintiff he was "in a lot of trouble" and threatened to punch him. Hunter then repeatedly punched plaintiff in the face and called him names for 25 to 35 minutes. Throughout the incident plaintiff was handcuffed to a bench.[2]

Defendant Sergeant Burns, who overheard noises in Cell No. 1, asked Hunter if he was trying to kill plaintiff, stated that there was blood "all over the place," and directed Hunter to leave the cell. Other officers then asked plaintiff if he was all right, stated that his nose was bleeding, and told him to hold back his head. Burns told one of the officers to take some photographs of plaintiff and drive him to the hospital for medical treatment.

Plaintiff claims that defendants' conduct in using physical force against him without need or provocation and their failure to intervene to prevent the misuse of force was malicious, sadistic, and constituted cruel and unusual punishment in violation of the Eighth and Fourth Amendments of the United States Constitution. He requests a declaratory judgment that the acts complained of violated his constitutional rights and that defendants' conduct constituted assault and battery, police misconduct, intentional wrongdoing and deliberate violation of the law.

It also appears that plaintiff seeks money damages. He avers that he is on medication for pain in the back of his head and the lower part of his legs, that some of the injuries may be permanent, that he has a lump the size of a walnut on the back of his head, and that he

---

[2] In his July 16, 2004 declaration, plaintiff claims that Officer Llukaci beat plaintiff while questioning him in Cell No. 1.

occasionally experiences mental confusion, nosebleeds and difficulty in walking. Attached to the amended complaint is report from University Hospital dated May 1, 2001, setting forth the following diagnosis: "Skin abrasions, muscular pain, concussion."

## DEFENDANTS' MOTION

**Summary judgment standard**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**Defendants' factual summary**

Defendants summarize their version of the facts, supported by references to the record, as well as plaintiff's version of the incident as follows:

> On May 1, 2001 at 7:44 p.m., a red Ford van with New York Registration AEG6564 approached Syracuse Police Officer Rebecca Cosgrave on E. Division St. at Lock Alley. The driver of the van, John R. Kelly, offered to sell Officer Cosgrave crack cocaine. Mr. Kelly produced a clear, knotted plastic bag with a beige chunky substance inside which he dropped into Officer Cosgrave's hand. Officer Cosgrave then dropped a U.S. twenty-dollar bill, serial number AC01357926D, into Mr. Kelly's hand. Mr. Kelly claims that he was waiting for a female friend when he was approached by Officer Cosgrave who asked him for drugs which he denied he had. Mr. Kelly claims that Officer Cosgrave then proceeded to the back of his vehicle where she pulled a gun thus causing him to speed away from the scene frightened at the thought of possibly being robbed.

After the drug transaction, Officer Cosgrave proceeded to Sergeant Burns's car and Officer Babbage was radioed and ordered to pull Mr. Kelly over. Officer Babbage attempted to stop the van, NY Reg. AEG6564, with his emergency lights but Mr. Kelly refused to stop. Mr. Kelly then led Officer Babbage on a chase onto I-81 S. Officer Babbage radioed the pursuit to other units and Officers Prue, Goodeve [and] Hanley responded. Mr. Kelly claims that he did not see Officer Babbage or Officers Prue and Goodeve pursing him in three marked police vehicles with their lights and sirens on until after he got onto I-81 S. He claims that he thought they were trying to pull someone else over despite the fact that Officer Babbage had been pursuing him, with his emergency lights and sirens on, for four city blocks before proceeding onto I-81 S.

On I-81 S., Mr. Kelly, the only occupant of the van, began to throw items out of the vehicle which the officers believed to be crack cocaine. Officer Babbage radioed this information so that other officers could retrieve the suspected narcotics. Officer Babbage then witnessed Mr. Kelly rip the bags open with his teeth and throw the opened baggies out the passenger side window. Nine baggies which contained a brown rock like substance, which was later determined to be cocaine, were recovered along I-81 S. from distances of 77 ft. to 177 ft. from mile maker 84. The twenty dollar bill, serial number AC01357926D, that Officer Cosgrave had given Mr. Kelly was also recovered near mile marker 84.

After crossing the Harrison and Adams St. on ramp a marked New York State Police vehicle pulled in front of Mr. Kelly's red van. The van slowed then stopped and Mr. Kelly tried to go around the marked police vehicle but could not due to heavy traffic. Officer Goodeve then positioned his vehicle in front of the van at an angle in an attempt to block a possible getaway. Officer Goodeve got out of the driver side while Officer Hanley got out of the passenger side.

Officer Prue arrived on the scene just as Officer Babbage was approaching the van with his gun drawn. Officer Babbage repeatedly ordered Mr. Kelly to put his hands up and to step out of the van but Mr. Kelly refused. Mr. Kelly claims that once alerted that the police were trying to pull him over he quickly did so, placed his vehicle in park, and put his hands out the window.

Officer Babbage attempted to remove Mr. Kelly by opening the door and grabbing him by his shirt while simultaneously telling him to get out of the vehicle but Mr. Kelly refused to comply and further tightened his grip on the steering wheel. While Officer Babbage was attempting to remove Mr. Kelly from the driver side, Officer Goodeve went to the passenger side door and Officer Hanley went to the back door of the vehicle. Officer Goodeve opened the passenger side door and reached into the vehicle to aid Officer Babbage but Mr. Kelly accelerated hard causing both Officer Goodeve and Babbage to be struck by the vehicle. Mr. Kelly's van then collided with Goodeve's police vehicle causing it to become damaged. Mr. Kelly claims that he did not cause his vehicle to crash into the patrol car, that rather the police officers must have backed

the van up after the fact, opened the patrol car door and then crashed it into the patrol car themselves.

Officer Babbage's leg was now caught between the police vehicle and the van causing him great pain. Officer Goodeve and Hanley took defensive measures and struck Mr. Kelly with their fists in an attempt to stop his physical resistance. When Officer Goodeve realized that his action was having no [e]ffect he used his collapsible baton and struck Mr. Kelly in the legs.

After getting his leg free, Officer Babbage, with the assistance of Officer Prue, pulled Mr. Kelly through driver side window by his neck and onto the ground; this was the quickest method available to get Mr. Kelly, who was kicking and punching, out of the van. Mr. Kelly claims that he was not resisting when the arresting officers pulled him out of the window of his van, and he also claims that they punched him repeatedly in the head. Mr. Kelly was taken out of the car and onto the ground where he continued to fight even after being handcuffed.

Officer Llukaci was advised via the police radio of the incident in progress and proceeded to the scene. Upon arrival Officer Llukaci observed that Mr. Kelly was already handcuffed. Officer Llukaci assisted the other officers by placing Mr. Kelly into a police vehicle and following them to C.I.D. for processing where it was observed that Mr. Kelly had a cut on his nose, and a black eye, but no major injuries.

Once at C.I.D., Mr. Kelly became highly combative and started to kick at Officer Llukaci while trying to elude the grip the officer had on him. Officer Llukaci forced Mr. Kelly to the ground and was able to subdue him without further incident. Officer Llukaci then performed a field test on a sample of the suspected crack cocaine using a NarcoPouch 904B test kit; the sample came back positive for the presence of cocaine. Mr. Kelly denies ever becoming combative with the officers in CID and further claims that he was called racial slurs and was then attacked by two detectives who punched him until he fell to the floor and then stood him up and "smashed" his throat.

After his arrest Mr. Kelly complained of lower back injuries, an injured elbow, as well as double vision and the appearance of red and black spots in his left eye's field of vision. He claims these injuries were caused by being punched and kicked by the police officers.

May 2nd, 2001, the day after his arrest, a CT scan was performed on Mr. Kelly and it was discovered that there is a bullet as well as additional foreign metallic objects lodged in his posterior scalp. X-rays on the same date also found a 1cm and a 1.5cm jagged radiopaque object located in the left frontal lobe of his head which the attending physician classified as shrapnel. X-rays also revealed that Mr. Kelly sustained no broken ribs, no fractures or dislocation of his elbow, and no fractures of the face.

(Citations to record omitted.)

**Section 1983, generally**

"Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). Here, it is undisputed that any actions taken by defendants were effected under color of state law.

**Eighth Amendment**

The Eighth Amendment prohibition of cruel and unusual punishment applies only in a postconviction setting. *See Ingraham v. Wright*, 430 U.S. 651, 668-71 (1977). Accordingly, the Eighth Amendment does not apply to the claims herein. Plaintiff's Eighth Amendment claims are dismissed.

**Fourth and Fourteenth Amendments**

Plaintiff's claims that defendants wrongfully arrested him, used excessive force in arresting him and/or failed to intervene when others did so, implicate the Fourth Amendment, made applicable to the states under the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395-96 (1989). Plaintiff's claims that defendants used excessive force in interrogating him and/or failed to intervene when others did so are grounded in the due process clause of the Fourteenth Amendment. *See id.* at 395, n.10. Thus, these claims, if proven, may establish violations of plaintiffs' constitutional rights for purposes of 42 U.S.C. § 1983.

The Court rejects defendants' argument that they are entitled to summary judgment because plaintiff's opposition to their motion is so contradictory as to be implausible. It is well established that a *pro se* document "is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97,

106 (1976). While confusing and contradictory in some respects, plaintiff's *pro se* submissions are substantially consistent with respect to most significant events surrounding his arrest and questioning. Plaintiff's factual averments are sufficient to raise questions of fact regarding material elements of defendants' submissions. Accordingly, summary judgment on this ground is denied.

Defendants also argue that plaintiff fails to allege facts sufficient to state claims against certain defendants. Specifically, defendants contend that all claims against Burns, Abbot, Estabrook and Hunter should be dismissed because they had no interaction with plaintiff during the incident.[3]

With respect to Burns, plaintiff claims that he was involved in the arrest. Also, it is undisputed that Burns was the supervising officer during the questioning of plaintiff in Cell No. 1. Accordingly, plaintiff's claim of failure to intervene to prevent the misuse of force is sufficient to assert a claim against Burns. Moreover, plaintiff claims that when preparing the "resistance report," Burns attempted to "cover up the defendants' actions" by misrepresenting plaintiff's physical complaints.

In his July 16, 2004 declaration, plaintiff alleges that Hunter was involved in the arrest. Also, plaintiff's amended complaint claims that Hunter beat him when he was in Cell No. 1. It is true that in his July 16, 2004 declaration plaintiff claims that Llukaci beat him in Cell No. 1; this is not, however, sufficient to warrant summary judgment dismissing plaintiff's claims against Hunter.

In his amended complaint and July 16, 2004 declaration, plaintiff alleges that Abbot and

---

[3] It is undisputed that officers Hanley, Babbage, Goodeve and Prue were involved in the stop and arrest of plaintiff on Route 81.

Estabrook were involved in his arrest. Accordingly, the Court denies summary judgment dismissing plaintiff's Fourth and Fourteenth Amendment claims against Burns, Abbot, Estabrook and Hunter.

**Qualified Immunity**

Defendants also argue that they are entitled to summary judgment on the ground that their actions were protected by qualified immunity. Government officials performing discretionary functions enjoy a qualified immunity shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

If the jury accepts plaintiff's version of events – that is, that despite his innocence of any crime and his compliance with their commands, defendants wrongfully stopped and arrested him, beat him severely and/or failed to prevent others from doing so – defendants could not reasonably have believed their conduct was consistent with plaintiff's rights. Accordingly, defendants are not entitled to dismissal on the ground that they are protected by qualified immunity as a matter of law.

**Statement of Material Facts**

Given plaintiff's *pro se* status and in view of the numerous disputed issues of material fact, plaintiff's failure to comply with Local Rule 7.1 in responding to defendants' Statement of Material Facts Not in Dispute does not affect the outcome of these motions.

**PLAINTIFF'S CROSS MOTION**

It is clear from the above discussion that the record presents material questions of fact with respect to plaintiff's claims. Accordingly, plaintiff's cross motion for summary judgment is

denied.

## CONCLUSION

Accordingly, the Court grants so much of defendants' motion for summary judgment as seeks dismissal of plaintiff's Eight Amendment claims.  In all other respects, the Court denies defendants' summary judgment motion. [4]  The Court denies plaintiff's cross motion in its entirety.

It is therefore

ORDERED that defendants' motion for summary judgment is granted insofar as it seeks dismissal of plaintiff's claims based on the Eighth Amendment and is otherwise denied; and it is further

ORDERED that plaintiff's cross motion for summary judgment is denied.

IT IS SO ORDERED.

September 27, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge

---

[4] The Court notes that in their Memorandum of Law, defendants argue that the amended complaint fails to state a claim against the city of Syracuse.  However, the City is not a defendant in this action, Dkt. No. 02-CV-641, and there is nothing in defendants' Notice of Motion or other submissions on this motion which would alert plaintiff that defendants sought relief in any of the member cases, Dkt. Nos. 02-CV-659, 02-CV-660 and 02-CV-661.  Accordingly, the Court does not address the issue in the context of the motions presently before it.